# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY et al., | § <br> § <br> § |
| *Plaintiffs,* | §    Civil Action No. 4:22-cv-00196 |
| v. | §    Judge Mazzant |
|  | § |
| CARTER & CARTER CONSTRUCTION, LLC et al., | § <br> § <br> § |
| *Defendants.* | § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Transfer Venue (Dkt. #20). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED as to the alternative requested relief of a stay.**

### BACKGROUND

**I.  Factual Background**

The parties' relationship generated two different lawsuits that are currently pending in federal district courts. On July 8, 2011, Zurich American Insurance Company, Colonial American Casualty and Surety Company, and Fidelity and Deposit Company of Maryland (collectively, "Plaintiffs") entered into an indemnity agreement where they would provide surety bonds on behalf of Carter & Carter Construction, LLC ("Carter & Carter"), Precision Builders, LLC ("Precision"), Carter & Carter Real Estate, LLC ("CCRE"), Bradley Collin Carter, and Casey Carter. Subsequently, on June 8, 2018, Plaintiffs executed another indemnity agreement ("2018 Indemnity Agreement") with Carter & Carter, Precision, CCRE, Casey Carter, Bradley Collin Carter, and Flight Club Aviation, LLC ("Flight Club") that would apply to all previous surety

bonds Plaintiffs issued and any new bonds issued thereafter. In 2019, N3CC, LLC ("N3CC") executed a rider agreement—adding it to the 2018 Indemnity Agreement.

The 2018 Indemnity Agreement provides that Carter & Carter, Precision, CCRE, Casey Carter, Bradley Collin Carter, Flight Club, and N3CC (collectively, "Defendants") will indemnify Plaintiffs for any and all liability and loss arising from or related to any payment and performance bonds issued on behalf of Defendants (Dkt. #1, Exhibit 3 at p. 1). Furthermore, the parties agreed that Defendants, on demand, would deposit an amount of money that Plaintiffs determined sufficient to fund any liability or loss (Dkt. #1, Exhibit 3 at p. 1). The 2018 Indemnity Agreement also granted Plaintiffs collateral security interests in certain property, including in project funds for bonded projects (Dkt. #1, Exhibit 3 at p. 2).

In connection with the indemnity agreements, Plaintiffs issued payment and performance bonds for Carter & Carter's construction projects in Frisco, Texas ("Alaqua Project") and West Columbia, South Carolina ("Brookland Project"). Ultimately, claims were made on these bonds because Carter & Carter allegedly defaulted and failed to pay subcontractors and/or suppliers. Litigation ensued in Texas state court over the Alaqua Project and in South Carolina state court over the Brookland Project. As a result, Plaintiffs allege that they suffered substantial costs and expenses in investigating and defending these claims.

On January 5, 2022, Plaintiffs sent Defendants a demand letter seeking reimbursement and protection pursuant to their indemnity agreements. Specifically, Plaintiffs requested Defendants (1) pay $519,737.47 in costs for investigating and defending the claims related to the Brookland Project and the Alaqua Project and (2) deposit collateral in the amount of $300,000 to protect Plaintiffs from further losses. Defendants refused to do either—citing the fact that Plaintiffs did not produce information that supported their demand for payment. Following Defendants' refusal,

Plaintiffs demanded tender of $525,000 in contract funds that were being held by the Registrar of Deeds in Lexington County, South Carolina, in connection to litigation over the Brookland Project. Carter & Carter took an adverse position to Plaintiffs and claimed it was entitled to the funds. On February 28, 2022, Plaintiffs once again demanded indemnification and requested additional security to protect themselves from further loss. Defendants refused both requests.

## II.   Procedural Background Between the Parties

On February 15, 2022, Carter & Carter filed a lawsuit in Alabama state court ("Alabama lawsuit") that alleged Plaintiffs breached the 2018 Indemnity Agreement by acting in bad faith and interfering with its rights to the contract funds held by the Registrar of Deeds in Lexington County, South Carolina (Case No. 3:22-cv-00137, Dkt. #1, Exhibit 1).[1] On March 18, 2022, Plaintiffs removed the Alabama lawsuit to the United States District Court for the Middle District of Alabama (Case No. 3:22-cv-00137, Dkt. #1).

On March 14, 2022, Plaintiffs filed the current case against Defendants alleging causes of action for (1) breach of contract, (2) breach of fiduciary duty, (3) conversion, (4) attorneys' fees, and (5) costs and interest. All causes of action center around the fact that Defendants did not honor their obligations under the relevant indemnity agreements because they refused to indemnify Plaintiffs, provide appropriate security, or turn over the contract funds held by the Registrar of Deeds in Lexington County.

On April 6, 2022, Defendants filed the pending motion in this Court, arguing that the Court should (1) transfer the case under the first-to-file rule or (2) stay the current action (Dkt. #20). On

---

[1] The Court takes judicial notice of the docket entries and judicial documents filed in the Alabama lawsuit. *See Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 327 (E.D. Tex. 2021) ("Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice.") (citing *Duncan v. Heinrich*, 591 B.R. 652, 655 n.2 (M.D. La. 2018)) (internal citations omitted); *see also* FED. R. EVID. 201. The Court will refer to any filings in the Alabama lawsuit by its case number (No. 3:22-cv-00137) and appropriate docket entry.

April 20, 2022, Plaintiffs filed their response (Dkt. #23). On May 11, 2022, Defendants filed their reply (Dkt. #25). On June 15, 2022, Plaintiffs filed their sur-reply (Dkt. #29).

Since the parties' briefing for Defendants' Motion to Transfer Venue, the Middle District of Alabama has granted Carter & Carter leave to amend its complaint on two separate occasions (Case No. 3:22-cv-00137, Dkt. #20; Dkt. #47). Carter & Carter subsequently joined all Defendants in this case as co-plaintiffs in the Alabama lawsuit (Case No. 3:22-cv-00137, Dkt. #21; Dkt. #48). Defendants also added other causes of action, including for declaratory judgment relating to Plaintiffs' demands for indemnification and collateral, as well as actions for declaratory judgement and breach of contract tied to a construction project unrelated to this Court's case (Case No. 3:22-cv-00137, Dkt. #48). The Alabama lawsuit is currently pending and subject to a motion to dismiss by Plaintiffs. *See* (Case No. 3:22-cv-00137, Dkt. #52).

## LEGAL STANDARD

### I. Staying Proceedings

The district court has inherent power to control its own docket, including the power to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How to best manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "In deciding whether to exercise the discretion to stay litigation, the Court should consider the interests of each party, as well as the conservation of judicial resources." *Miller Weisbrod, LLP v. Klein Frank, PC*, No. 3:13-CV-2695-B, 2014 WL 2738231, at *2 (N.D. Tex. June 17, 2014) (citations omitted). Additionally, when a stay is premised on the resolution of another case, "the court must carefully consider the time reasonably expected for resolution of the 'other case,' in light of the principle that 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'" *Wedgeworth v.*

4

*Fireboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)).

**II.     First-to-File Rule**

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). This rule exists to support "comity and sound judicial administration" among the federal courts. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *see Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 599 (E.D. Tex. 2019) ("The first-to-file rule is a venue and efficiency consideration, not an adjudication on the merits or a question of jurisdiction."). "The rule's ultimate aim is to avoid three potential, undesirable outcomes: (1) 'the waste of duplication,' (2) 'rulings which may trench upon the authority of sister courts,' and (3) 'piecemeal resolution of issues that call for a uniform result.'" *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2020 WL 6161495, at *5 (E.D. Tex. Oct. 21, 2020) (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985)). "'When related cases are pending before two federal courts,' the first-to-file rule generally allows 'the court in which the case was last filed to refuse to hear it if the issues raised by the cases substantially overlap.'" *Id.* (brackets omitted) (quoting *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011)).

To determine if substantial overlap exists, courts in the Fifth Circuit examine "whether 'the core issue was the same' or if 'much of the proof adduced would likely be identical.'" *Int'l Fid. Ins. Co.*, 665 F.3d at 678 (footnote and ellipses omitted) (first quoting *W. Gulf Mar. Ass'n*, 751 F.2d at 730; then quoting *Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). Though the cases need not be identical for the first-to-file rule to apply, *In re Amerijet Int'l, Inc.*,

785 F.3d 967, 976 (5th Cir. 2015) (per curiam), they "must be 'more than merely related.'" *Brocq v. Lane*, No. 3:16-CV-2832, 2017 WL 1281129, at *2 (N.D. Tex. Apr. 6, 2017) (quoting *Buckalew v. Celanese, Ltd.*, No. G-05-315, 2005 WL 2266619, at *2 (S.D. Tex. Sept. 16, 2005)). If overlap between the cases is less than complete, courts have looked to additional factors, such as "the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power Ltd.*, 121 F.3d at 951 (internal quotation marks omitted) (quoting *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)). If substantial overlap exists, "the proper course of action is for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Wells Fargo Bank, N.A. v. W. Coast Life Ins.*, 631 F. Supp. 2d 844, 847 (N.D. Tex. 2009) (citing *Cadle*, 174 F.3d at 606); *see also Tex. Health Mgmt. LLC v. HealthSpring Life & Health Ins. Co., Inc.*, 380 F. Supp. 3d 580, 588 n.6 (E.D. Tex. 2019) (affirming that district courts should not act as "super appellate court[s]" when applying the first-to-file rule).

But a finding of substantial overlap does not end the inquiry. *In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *6. Mechanical application of the first-to-file rule is not required on every occasion and may very well be inappropriate in specific instances. *See, e.g.*, *Hunt-Collin Elec. Co-op, Inc. v. Rayburn Country Elec. Co-op, Inc.*, No. S-87-211, 1988 WL 428654, at *2 (E.D. Tex. Feb. 5, 1988) ("Blindly applying the first-to-file rule only on the basis of the actual filing dates . . . would not further the goals of the rule." (cleaned up)). Only "[i]n the *absence* of compelling circumstances" should it be employed. *Mann Mfg., Inc.*, 439 F.2d at 407 (emphasis added). While the Fifth Circuit has provided limited "guidance or examples as to what sort of circumstances it would consider 'compelling,'" *Twin City Ins. Co. v. Key Energy Servs., Inc.*, No.

6

H-09-0352, 2009 WL 1544255, at *4 (S.D. Tex. June 2, 2009), rigidly applying the first-to-file rule when compelling circumstances present themselves leads to the abandonment of the "comity principles that underlie the . . . rule" itself. *W. Gulf Mar. Ass'n*, 751 F.2d at 730; *see also, e.g.*, *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 n.8 (5th Cir. 1985).

## ANALYSIS

The parties agree that the first-to-file rule is implicated here. Both parties acknowledge that the Alabama lawsuit was filed before Plaintiffs filed in this Court (Dkt. #20 at p. 6; Dkt. #23 at p. 9).[2] Plaintiffs have also conceded that both cases substantially overlap. *See* (Dkt. #20 at pp. 6–7; Dkt. #23). Instead, Plaintiffs focus their efforts on convincing the Court that it should utilize its discretion and not apply the first-to-file rule in the context of this case.

When the first-to-file rule is implicated, courts must be careful to not apply the rule mechanically. *In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *6. The rule should only apply in the absence of compelling circumstances. *Mann Mfg., Inc.*, 439 F.2d at 407. According to Plaintiffs, such circumstances exist here because (1) Defendants filed the Alabama lawsuit solely in anticipation of the current action in order to forum shop and (2) the 2018 Indemnity Agreement's forum-selection clause precludes transferring the case (Dkt. #23 at pp. 9–14).[3]

---

[2] The Court notes that the relevant date for the Alabama lawsuit is the date on which it was originally filed in state court—not the date it was removed to the Middle District of Alabama. *See Bank of Am. v. Berringer Harvard Lake Tahoe*, No. 3:13-CV-0585-G, 2013 WL 2627085, at *3 (N.D. Tex. June 12, 2013) ("[T]he date the action was filed in the Nevada state court, rather than the date the action was removed to the District of Nevada . . . . is used to determine which action was first-filed for purposes of the first-to-file rule."); *Rowdec, LLC v. Hancock Fabrics, Inc.*, No. 3:12-CV-1441-P, 2012 WL 13027487, at *2 (N.D. Tex. Oct. 16, 2012). Because the Alabama lawsuit was originally filed in state court before Plaintiffs brought their claims, Defendants' Alabama lawsuit is considered the first-filed case under the first-to-file rule. *See Bank of Am.*, 2013 WL 2627085, at *3.

[3] In the 2018 Indemnity Agreement, the parties agreed to a Lawsuits and Jurisdiction provision, which provided:

> 21. LAWSUITS AND JURISDICTION: Separate lawsuits may be brought under this Agreement as causes of action accrue, and the bringing of any lawsuit or the recovery of any judgment on any cause of action shall not prejudice or bar the bringing of other lawsuits, on the same or other causes of action, whether arising before or after any other lawsuit or cause of action. In any legal proceeding brought by or against Surety that in any way relates to this Agreement, each indemnitor irrevocably and unconditionally submits to the jurisdiction, at Surety's sole option, of the Federal, state and

7

Plaintiffs have advanced persuasive arguments for why the Court should not transfer the case pursuant to the first-to-file rule, particularly in light of the circumstances leading up to the Alabama lawsuit and the parties' unique forum-selection clause. Therefore, rather than transferring the case, the Court grants Defendants' alternative relief, and it will stay the current case.

Even assuming that the first-to-file rule applies, the Court has the discretion to stay the case under the rule. *See Yeti Coolers, LLC v. Ontel Products Corp.*, No. 1:16-CV-1283-RP, 2017 WL 8182753, at *1 (W.D. Tex. Aug. 14, 2017) ("The [first-to-file] rule grants federal district courts the discretion to dismiss, stay, or transfer a later-filed action in favor of the first-filed action and therefore avoid duplicative litigation.") (citing *W. Gulf Mar. Ass'n*, 751 F.2d at 728–31); *Brocq*, 2017 WL 1281129, at *4 (citing *W. Gulf Mar. Ass'n*, 751 F.2d at 729 n. 1). And—outside of the first-to-file rule context—it has been a longstanding practice for courts to stay proceedings when there are two related cases pending in different federal courts. Indeed, "there is an inherent power in each of those courts, when presented with an appropriate motion, to stay the proceedings before it in deference to the related action." *Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 341 F. Supp. 2d 639, 642 (N.D. Tex. 2004)) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see also Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1008–11 (N.D. Ill. 2009) (granting motion to stay pursuant to court's inherent power when similar actions were pending in different federal courts); *Home Design Services, Inc. v. Stewart*, No. 3:09CV140/MCR/MD, 2009 WL 10710863, at *2 (N.D. Fla. Dec. 24, 2009) (granting stay because related cases were pending in different federal courts); *Georgia ex. rel. Olens v.*

---

> local courts in which (a) any Indemnitor resides or has property, (b) any bonded obligation arises or is performed, in whole or in part, or (c) any action may be brought against Surety. Indemnitors submit to the jurisdiction of such courts and waive and agree not to assert that they are not subject to the jurisdiction of any such court or that the jurisdiction and/or venue is in an inconvenient forum or otherwise improper

(Dkt. #1, Exhibit 3 at p. 3).

*McCarthy*, 833 F.3d 1317, 1321 (11th Cir. 2016) (holding appeal in abeyance when another circuit court was dealing with a similar case).

In the Alabama lawsuit, Plaintiffs are moving to dismiss Defendants' claims on several grounds, including that this Court is a more appropriate venue to hear the parties' case (Case No. 3:22-cv-00137, Dkt. #52). Furthermore, Plaintiffs intend to file a motion to transfer venue in the Alabama lawsuit assuming the motion to dismiss is denied. *See* (Dkt. #23 at p. 9). Given the fact that the Middle District of Alabama may choose to dismiss Defendants' action, or rule that this Court should decide the parties' controversy, it would be a waste of judicial resources to transfer the case altogether at this time. Though a stay is not always an appropriate remedy when two related cases are pending in federal courts, the circumstances here persuade the Court that implementing a stay is the most appropriate remedy.

Accordingly, the Court chooses to stay the current action until the Middle District of Alabama has ruled on Plaintiffs' motion to dismiss, or in the alternative, their motion to transfer venue.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Transfer Venue (Dkt. #20) is hereby **GRANTED as to the alternative requested relief of a stay.**

It is further **ORDERED** that all proceedings and pending deadlines in this case are hereby **STAYED** pending the resolution of Plaintiffs' motion to dismiss before the Middle District of Alabama or a subsequent motion to transfer venue in the Middle District of Alabama.

It is further **ORDERED** that the parties shall notify the Court within five (5) days of the Middle District of Alabama's decisions on the above-mentioned motions.

**IT IS SO ORDERED.**

**SIGNED this 29th day of November, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE